UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
FIDELITY NATIONAL TITLE INSURANCE
COMPANY,

                    Plaintiff,          <u>OPINION</u>

          -against-                     11 Civ. 4497 (MGC)


COLE TAYLOR BANK,

                    Defendant.

--------------------------------X

APPEARANCES:

          HERRICK, FEINSTEIN LLP
          Attorneys for Plaintiff
          2 Park Avenue
          New York, New York 10016

          By:  Michael Darren Traub, Esq.
               Anna Hershenberg, Esq.

          HODGSON RUSS LLP
          Attorneys for Defendants
          60 East 42nd Street
          New York, New York 10165

          By:  Robert Schrager, Esq.

**Cedarbaum, J.**

In 2010, at two New York mortgage refinancings, the settlement agent misappropriated closing funds wired to her by Cole Taylor Bank ("Cole Taylor").  Fidelity National Title Insurance Company ("Fidelity") sues for a declaratory judgment that title insurance policies were never issued in connection with the two mortgage refinancings, and that it owes Cole Taylor no obligations arising from these closings.  Cole Taylor counterclaims that Fidelity breached its contracts, that Fidelity is estopped from denying coverage, and that Fidelity's denial of insurance coverage constitutes bad faith.  The parties agreed to try the case on submitted, stipulated facts, and I held a <u>Daubert</u> hearing to determine whether the testimony of Cole Taylor's expert, Felice Shapiro, was admissible.  After considering all of the evidence, I make the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

<b>BACKGROUND</b>

Fidelity is a title insurance company with offices in New York.  Cole Taylor is an Illinois chartered bank and makes mortgage loans in several states, including New York.  At all relevant times, Johns and Lee Real Estate Service, LLC ("Johns and Lee") was a policy issuing agent of Fidelity pursuant to the terms of a written agreement (the "Agency Agreement").  In

addition to serving as Fidelity's policy issuing agent, Johns and Lee also engaged in escrow and settlement services for real estate transactions.  It advertised itself as "Your Full Service Title Company and Settlement Agent."  Tami Demers was the principal of Johns and Lee.

The Agency Agreement expressly stated that Johns and Lee was Fidelity's agent for the sole purpose of issuing title commitments and policies.  The Agency Agreement also prohibited Johns and Lee from engaging in escrow or closing activities on Fidelity's behalf.

On or about August 2010, Cole Taylor approved a mortgage loan application by Jeffrey Nusbaum, Jr. and Kelly Nusbaum for $220,451.  The Nusbaums were to use the loan proceeds to refinance the existing mortgage on their property in Schaghticoke, New York.  On or about September 2010, Johns and Lee issued a Commitment for Title Insurance for a form ALTA Policy, naming Cole Taylor as the proposed insured.  Prior to the closing and execution of the mortgage, Cole Taylor sent a HUD-1 settlement form and written closing instructions to Johns and Lee, outlining the acts that Johns and Lee was to perform on Cole Taylor's behalf at the Nusbaum closing.  Demers signed and returned a copy of the written closing instructions and the HUD-1 to Cole Taylor.  She acknowledged and agreed to Cole Taylor's closing instructions by signing as "settlement agent."  Fidelity

never communicated directly with Cole Taylor regarding the closing.

On or about October 4, 2010, Cole Taylor wired $219,169.48 to the bank account of Johns and Lee.  Demers subsequently stole these funds for her personal use.  Demers did not satisfy the first mortgage loan on the Nusbaum property, nor did she pay the mortgage recording fees. She did not pay Fidelity the premium due for its title insurance policy or record Cole Taylor's mortgage.  Nevertheless, at the closing, she "marked up" the Nusbaum Commitment for Title Insurance.[1]

Johns and Lee also served as settlement agent in connection with a refinancing in Albany of a mortgage held by Gregory E. Dahlmann and Christine M. Dahlmann.  At the Dahlmann closing, Demers again misappropriated all funds for her personal use.

Since the prior mortgages on the Nusbaum and Dahlmann properties were not satisfied, on November 17, 2010, Cole Taylor wrote to Fidelity to demand full coverage of its losses pursuant to the title commitments issued at the closings.  Fidelity denied the request for coverage on the ground that the preconditions to the issuance of the title policies were not fulfilled.  Furthermore, Fidelity contended that even if the title policies were deemed to have been issued, the claims would

---

[1] Cole Taylor's expert, Felice Shapiro, testified that the preliminary title policy is "marked up" at closing to bring it up to date and to certify that the lender is the insured.

not be covered under ALTA Policy Exclusions 3(a) and 3(e).
These exclude from coverage "[d]efects, liens, [and]
encumbrances" that are "created, suffered, assumed or agreed to
by the Insured Claimant," or that result in "loss or damage that
would not have been sustained if the Insured Claimant had paid
value for the Insured Mortgage."  Form ALTA Policy, Exclusions
3(a) & 3(e).

**DISCUSSION**

**I. Actual and Apparent Authority**

According to Fidelity, Cole Taylor's losses were caused by
Johns and Lee when Demers was acting as Cole Taylor's settlement
agent.  Thus, the conduct of Johns and Lee is imputed to Cole
Taylor, and ALTA Policy Exclusions 3(a) and 3(e) apply.  In
opposition, Cole Taylor argues that Johns and Lee was acting as
Fidelity's agent for all activities at the closings because
Johns and Lee was Fidelity's agent for the purpose of issuing
title commitments.

Under the Agency Agreement, Johns and Lee was prohibited
from engaging in closing activities on Fidelity's behalf.
Fidelity could be bound by the acts of Johns and Lee as an
escrow, settlement, or closing agent only if Fidelity had issued
a "closing protection letter."  It is undisputed that in New
York, closing protection letters are prohibited.

Cole Taylor argues that Johns and Lee had apparent authority to engage in settlement activities on Fidelity's behalf.  A finding of apparent authority depends upon "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction."  Hallock v. State, 64 N.Y.2d 224, 231 (1984).

According to Cole Taylor, because custom and practice may have shaped its understanding of Fidelity's conduct, the testimony of its expert on custom and practice is relevant to the question of apparent authority.  See, e.g., Prop. Advisory Group, Inc. v. Bevona, 718 F. Supp. 209, 211–12 (S.D.N.Y. 1989); Restatement (Third) of Agency § 1.03, cmt. e ("If a person is in a particular industry, industry custom and practice shape how others in that industry will understand manifestations that the person makes.").  Cole Taylor asserts that the testimony of its expert establishes that, pursuant to industry custom for upstate mortgage refinancings, Cole Taylor reasonably believed that Johns and Lee was an agent of Fidelity when Johns and Lee acted as settlement agent.

## II. Expert Testimony

Under Fed. R. Evid. 702, expert opinion testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The expert's testimony must be relevant to the task at hand and rest on a reliable foundation.  <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 584-87, 113 S. Ct. 2786, 2792-94, 125 L. Ed. 2d 469 (1993).

Cole Taylor's expert, Felice Shapiro, has worked in the title insurance industry in New York since March 1983.  She is currently the executive director and attorney for the Title Insurance Rate Service Association, which is the insurance rating bureau for New York State.  Shapiro testified that in a refinancing transaction upstate (including the Albany area), closings tend to be more informal than closings downstate. Small agencies often serve as both title agents and settlement agents at a single closing.  Downstate, there is a greater likelihood that the title company and the lender would have separate representatives appear at the closing.

Shapiro also testified that closing instructions from the lender to the settlement agent have nothing to do with the title agent.  The settlement agent disburses the loan proceeds, but

does not necessarily close the title or insure it.  Typically, the title agent would not see the closing instructions unless he was serving as both settlement and title agent, as Johns and Lee was here.  Shapiro testified that when Johns and Lee stole the closing proceeds, it did so as a settlement agent.

Shapiro is qualified to testify about her experience in the title insurance industry, and her testimony clarified some of the terminology in the relevant evidence.  Accordingly, her opinions are admitted into evidence under Fed. R. Evid. 702.

## III. Whether Johns and Lee's Acts May Be Imputed to Fidelity

Shapiro's testimony established that Cole Taylor should not reasonably have believed that Johns and Lee was Fidelity's agent when Demers accepted the money as settlement agent.  Shapiro offered no testimony to support the proposition that in upstate closings, a lender would reasonably believe that a settlement agent, acting as settlement agent, was acting on behalf of the title company.  Cole Taylor's theory of apparent authority belies common sense.

Cole Taylor makes two additional arguments in support of its contention that Johns and Lee was an agent of Fidelity when acting as settlement agent.  First, it argues that the Agency Agreement gave Fidelity the right to audit the escrow accounts of Johns and Lee.  Second, it argues that Fidelity did not follow the industry custom that requires the policy issuing

agent to use a different name to conduct its escrow, settlement, and closing activities.

First, Fidelity's right to audit the escrow accounts of Johns and Lee, without more, is inadequate to establish that Johns and Lee was acting on Fidelity's behalf when it engaged in settlement activities.  In another case involving Johns and Lee's misappropriation of escrow money, the court rejected plaintiff's argument that Fidelity's right to audit accounts established apparent authority.  See Otty v. Johns & Lee Real Estate Servs. LLC, No. SC-0180-11 (City Ct., Saratoga Springs, N.Y., June 22, 2011) (unpublished opinion).  The court denied plaintiffs' motion for summary judgment and granted Fidelity's motion to dismiss, finding that plaintiffs did not allege any representations made by Fidelity that established Johns and Lee's apparent authority.  Id. at 5.  See also Fidelity Nat'l Title Ins. Co. v. Mussman, 930 N.E.2d 1160, 1168 (Ind. Ct. App. 2010) ("Fidelity's authority to audit ITC's escrow accounts does not convert ITC's limited agency to issue title insurance commitments and policies into a broader general agency in which Fidelity has vicarious liability as the principal.").

Second, Shapiro's testimony established that *certain* title companies require their agents to use separate names as settlement and title agents.  Johns and Lee's letterhead, representing itself as "Your Full Service Title Company and

Settlement Agent," was not a representation by Fidelity, and there is no evidence that it was misleading in the context of industry practice.

Cole Taylor has not pointed to any words or conduct by Fidelity that would have caused Cole Taylor to believe that Johns and Lee was acting as a settlement agent on behalf of Fidelity.  See <u>HSA Residential Mortg. Servs. of Texas v. Stewart Title Guar. Co.</u>, 7 A.D.3d 426, 427 (1st Dep't 2004) (affirming the dismissal of a complaint where plaintiff did not "allege any words or conduct by the title insurers that could have caused plaintiff to believe that their function involved more than the issuance of title insurance policies, such as might warrant holding them responsible for the misappropriated mortgage funds under the doctrine of apparent authority."). Therefore, Fidelity cannot be held responsible for the misappropriated funds under the doctrine of apparent authority.

## IV. Whether Johns and Lee's Conduct May Be Imputed to Cole Taylor

Fidelity argues that because Johns and Lee was acting as Cole Taylor's settlement agent when the theft occurred, Johns and Lee's conduct must be imputed to Cole Taylor as a matter of law.  When a financial institution directs a settlement agent to satisfy a pre-existing mortgage, the settlement agent's acts are "properly imputed" to the financial institution.  See <u>Fidelity</u>

Nat. Title Ins. Co. of N.Y. v. Consumer Home Mortg., Inc., 272
A.D.2d 512, 514 (2nd Dep't 2000).  In that case, disbursement
checks drawn on a settlement agent's account were dishonored for
insufficient funds.  Id. at 513-14.  Fidelity refused to record
the mortgages and brought a declaratory judgment action.  In
holding that the settlement agent's acts were properly imputed
to the financial institution and not to Fidelity, the court
stated: "Where a loss is caused by the fraud of a third party,
in determining the liability as between two innocent parties,
the loss should fall on the one who enabled the fraud to be
committed."  Id. at 514 (citations omitted); see also Polanco v.
IndyMac Bank, F.S.B., No. 20081/07, 2009 N.Y. Misc. LEXIS 3933,
at *8-10 (Sup. Ct. Queens Co. Feb. 5, 2009) (holding that a
title insurer should not bear the loss incurred by the acts of a
bank's settlement agent).  Cole Taylor contends that a
settlement agent is merely an escrow depository with limited
duties, not a legal agent.  Regardless of whether the settlement
agent is a legal agent, Johns and Lee was acting on behalf of
Cole Taylor when Demers stole the funds, and Cole Taylor enabled
the fraud to be committed.

Furthermore, a mortgage title insurance policy insures
against loss based on title to the land.  It does not insure the
underlying debt.  Fidelity, 272 A.D.2d at 514.  Without a
mortgage, there is no enforceable title policy.  Id.  Here,

because neither the borrowers nor the banks holding the prior mortgages received loan proceeds, there were no valid mortgages, and no title policies were issued.  Although Johns and Lee furnished marked-up title commitments, these did not create valid title insurance policies because the preconditions for issuance were not satisfied.

Even if the title insurance policies were deemed to have been issued, Exclusion 3(a) of the form ALTA Policy excludes coverage for "[d]efects, liens, [and] encumbrances" that are "created, suffered, assumed, or agreed to by the Insured Claimant."  Because Cole Taylor gave express authority to Johns and Lee to perform settlement duties on its behalf, Johns and Lee's failure to satisfy the pre-existing mortgages may be imputed to Cole Taylor.  Cole Taylor thus "created" the mortgage defects in the Nusbaum and Dahlmann closings, and Fidelity's denial of coverage was proper.  I need not reach the applicability of Exclusion 3(e) of the form ALTA Policy.

### CONCLUSION

The foregoing opinion constitutes my findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).  For the reasons set forth above, Fidelity has shown by a preponderance of the credible evidence that no valid title policies were issued at the closings at issue, and that Fidelity does not owe Cole Taylor any obligations arising from either closing.

Declaratory judgment is granted to Fidelity, and Cole Taylor's counterclaims are dismissed.  The Clerk is directed to close the case.

        SO ORDERED.


Dated:      New York, New York
            July 10, 2012


                        S/_____
                            MIRIAM GOLDMAN CEDARBAUM
                          United States District Judge